Chief Justice Stewart, may it please the Court. What we have in this record is a simple RICO case. It has somehow been attempted to be hijacked into a contract case, and I want to go through the reasons why that is the reason why arbitration cannot occur in this case. Now, I would first start out by noting that we only have two-thirds of this agreement. The defendant did not choose to put in the whole agreement. Could you address the jurisdictional question first? Certainly. I'd be happy to. I received a letter, and basically, as I understand it, it says I voluntarily dismissed the case. Let me go through what did happen, if I may. First off, the judge ordered arbitration, then he set a status conference for six months later or something. The report said to him, a plaintiff has not initiated arbitration. He sent a second request for a status conference. The response said, plaintiff has not sought arbitration. The judge then issued a show-cause order as to why the case should not be dismissed. I could not, in good faith, tell the judge anything other than what the truth was, which was that we wanted to see either to litigate the case, and this is the most important document because it's the one that everybody cites, and it is docket number 27, and it's pages 358, 359, and it basically says, Your Honor, I respectfully understand where you're going with this. We disagree with your conclusion to go to arbitration. We will not pursue arbitration. That's on paragraph three of my letter. Paragraph four of my letter is, Greg stands ready to litigate this case to a conclusion. Then it says, different courts do not stay but dismiss, allowing the plaintiff to appeal. Forefather Torres, which was the Torres en banc case, was dismissed, so all I'm doing is telling him that has happened, and that is a fact. And then I end up by saying, Griggs and his counsel mean no offense to the court. However, they respectfully disagree with the court's arbitration order, and Griggs will either litigate this matter now or before this court, or we'll appeal and dismiss. Now, it seems to me that if I was going to seek a dismissal, I would have to say, I would like to have the case dismissed, and in fact, the case that they cite most recently that they've delivered to the court, that person not only asked for the case to be dismissed, but had tried to get an interlocutory appeal first and was denied. I didn't do anything except do nothing. So you're saying in straight candor to Judge Yackel, you said, I won't arbitrate. I'm going to refuse to arbitrate. I will not arbitrate. I will not arbitrate, but I can't appeal a stay. I need you to dismiss it. I won't dismiss it, because if I dismiss it, it's not appealable. He could have done anything he wanted at that point. But all I'm saying is . . . I'm not asking what he could have done. I'm asking what your purpose was. Was your purpose to obtain a Rule 41B dismissal that would allow you to appeal something that could not be appealed otherwise? No. My purpose was to litigate the case, as I said twice in my motion. That's what we wanted to do. So your position is that it was a 41B dismissal for lack of prosecution? I would guess so. I mean, you can read what the judge said, but . . . I've read what he said. You chose not to respond to the 28J, so it's the first time I'm hearing your argument. As I read the Fourth Circuit, it's cross-applying Microsoft to this context, saying a litigant can't force a district judge to create a final order that would not otherwise be appealable out of a tactical intention. And that begins to look like where it seems like you were, and you . . . right? Well, Your Honor, in that case, the person asked for his suit to be dismissed so he could appeal, explicitly asked for it. I was content to just wait until something else happened. A Supreme Court law could change? Who knows? The arbitration clauses could be . . . or the arbitration statute could be . . . You've got an order compelling you to arbitrate, but you won't arbitrate, and you'll wait until Supreme Court law changes. I'll wait until circumstances change to where I can do something. So then the district court's obliged to dismiss, and that puts you, you claim, into sort of the green tree world, where it's the district court's action, antagonistic to your intention, and you get to come. It's antagonistic to my intention to litigate. Yes. Okay. I mean, that is what I have said. I didn't want to be disrespectful to the judge. When he said, show cause, I had to give an explanation that was honest and truthful. I want to let you get to your principal argument, but if we, therefore, accept jurisdiction on your theory, it looks to me like it's a split with the Fourth Circuit. Do you agree with that? No, I do not. No, I do not, because I think that that case is wholly different when someone tries to appeal it, and then they ask, they ask for dismissal. That's how you distinguish it. Yes. I think that . . . It has no residual, because it's in the class certification context, Microsoft was, too. It's distinguishable on their ground. You agree that it virtually lines up, but for the fact they sought the dismissal. But for the fact they sought dismissal and sought of an appeal, I did not do either of those two. Okay? And I simply pointed out that what Judge Hoyt had done was a different tact. He dismissed it, and that became the entire Torres case. Without that, there never would have been a case, because Torres went up on arbitration years ago, ten years ago at most, and it was reversed by this panel because the arbitration agreement was void, or ineffective. Now . . . Before you leave that, maybe I'm thick on this, but despite your not asking for anything and just reporting to the court where you stood, the policies and procedures were new, and your client came in after the new ones, correct? There is a change to the arbitration clause. I would say the rest of the documents are all about the same. Right. So the policy and procedure requires arbitration of any claim. It adopts the AAA rules and states that the arbitrator will have the sole power to decide any question about the arbitrability of any claim. Those are the written words in two-thirds of the agreement. And how does that not control? Your Honor, the entire theory of this case, the word contract is not even used in the 107-page complaint. The entire theory is that it's a violation of the Racketeering Act through mail-and-wire fraud, by getting money from people by trick, okay? The contract, in its terms, if you see what you have in front of you, which is not all of it, but it does not state how much you have to pay to ignite, it does not promise you anything in return. Not one thing does it promise you in return. That's the substance of the case, but the question is arbitrability. And I don't know how you get around the arbitrator will have the sole power to decide any question about the arbitrability of any claim. Because the arbitration agreement itself is a product of fraud for the very purpose of preserving. Well, can't that be presented to the arbitrator? Not if there's not an arbitration agreement. And if it is deprived of mutuality. Well, that's one of your arguments about arbitrability. But who is the first to decide that? The court must decide. The court must, in the first instance, decide that. What's your best case for that? I don't know that I have that with me right now, but I certainly can follow up with the court. You think having your best case with you might be a good strategy? I think it would be if I considered the whole argument that we're making is much bigger than that. And I apologize. Well, your overarching argument has been forever that RICO per se is such a stringency that all these other rules about arbitrability don't apply. I mean, you've argued that on and on and on, that because you say RICO, that that eclipses any other rules about arbitrability, jurisdictions, et cetera. The two things you've said forever is, A, we only have two-thirds of the agreement, and B, RICO, because it's RICO, the contract rules, arbitrability, none of that applies. That's been the consistent theme below, back up here, et cetera, et cetera. And so the question is, you know, if that being the case, you've got to come in with more than just sort of the argument. So what is the best case that you have that will make this panel say that that principle has any legs to it? That's the question. Sitting on the table over there, but I don't have it in my head, sir. Well, there's no change from you going over there to the table and getting it. If I can find it. The whole point of oral argument is to answer the questions of the court. We've read the briefs. So if you've got some ammo over at the table, you either need to get it now or when you come back up here, because this is sort of the last chance. We've read this. You know, we've had Torres. The case has been up here. We've heard it in bank. We've got Griggs. We've read all of this and so forth. So the question is, if you're to win, you've got to come with something more forceful than just the same arguments that we've already read. I'm not antagonistic to you. I'm just trying to say, telling us what we already know is not going to get you home. Well, Your Honor, I think there's been a mistake in the way I presented it to the court. If you understand that I'm simply holding up the word RICO and run for the woods and say no arbitration, that is incorrect. All right. Then that would seem to go back to the question, Judge. Weiner asked you that, well, why isn't it that the arbitrator gets to determine the arbitrability, taking into account RICO or not? Because the arbitration clause is the product of fraud. And under the Supreme Court opinion in Prime of Paint and I forget the other, in Al-Rashid, I believe, both say that if the arbitration clause itself is the product of fraud, that it cannot be enforced. And that is a matter for the court, according to the U.S. Supreme Court in Prime of Paint. That's 50 years ago and it seems unbroken in interpretation, including recently in the cases they cite, Lawrence and Leffold, that it really has to be fraud in the inducement of that clause. It can't be the larger context is we say there's fraud. Whether acceptable or not, the argument is that the contract does not exist. I know. Okay. So it really falls back on your thought that because the compensation plan doesn't exist in the record, that we must infer that there is no arbitration clause. But my looking at the record is the arbitration clause is right there in front of us and the burden would be on you to say something that isn't in the record somehow rescinds it. Your Honor, I would agree with you on that, but the point is, if you look at this record, it says they do not have to pay anyone any money. They can eliminate you at will. There is not a single promise in that contract that can be bound. And the only thing that they're using that contract for is arbitration. That is the only purpose for that entire agreement, is to avoid being accountable for RICO. And the whole point of the complaint is that that entire scheme offers nothing. Back to Chief Judge Stewart's question, and you may have to do it on rebuttal, but if that's your view of this case, what case from any circuit in the last 50 years applying Prima Paint has said that we would still be the court to adjudicate that, not the arbitrator? I will be able to get it if you . . . All right. The court will be patient. I apologize for that. I believe it's our sheet, but it may not be. I do want . . . I have one minute and ten seconds, so I want to get down to the one last point, which is among the defendants in this case are the defendants who were in the Torres case as Ignite associates. In that case, this court has decided that they do not have an arbitratable or not bound to arbitration, okay? The presidential directors that are listed as individuals were in the Torres class as IAs and do not and did not have a binding arbitration because of lack of mutuality, which the court decided that issue as well. Now, in the case here, these people can't possibly have a mutual obligation to arbitrate with my clients because they don't have an agreement with Ignite according to this court's holding. So those individuals are but people who are attempting to arbitrate through a claim based on fraud, and the case law in Texas and this court are very clear that if it's concerted action but not arising out of contract, the arbitration clause cannot be used by agents. Does the fact that this was revised and is a new arbitration provision not throw that argument out? Well, if it is, then the whole Torres case was a big caustic joke because that would have applied to everyone there, and that's not the case. The case is that that contract never came to fruition. But your client came into the system after the revision. May I respond? Sure. Yeah. Okay. Well, Your Honor, the thing about this is, is that if you weren't, if you were in the and you didn't get anything back, this court said no mutuality on the arbitration. So you don't have an agreement to change. That's our position. This whole thing depends on using the courts to allow people to collect money from people who otherwise would be able to bring a perfectly good case if it weren't for the arbitration clause. All right, Mr. Freeman, you've reserved your rebuttal time, and you'll have it intact. All right. Thank you. We'll hear from Ms. Holtz. May it please the court. This case reduces to a simple either or proposition. Either this is a voluntary dismissal case over which this court lacks jurisdiction, or it is a failure to prosecute case where there is no argument the district court abused its discretion. Either way, the judgment below must stand. First, on jurisdiction, when the district court asked my friend to show cause why his case should not be dismissed after 18 months went by after the court compelled arbitration and Griggs refused to do so. He forthrightly admitted then, as he has done today, that he had no excuse to offer. He wanted only to litigate, and he steadfastly refused to arbitrate. He offered no resistance to dismissal. The trial court obliged, and Griggs appealed. But in Microsoft v. Baker, the Supreme Court squarely rejected the idea that a dismissal like this one could convert an unappealable interlocutory order, such as the order compelling arbitration and staying pending arbitration, into an immediately appealable final decision. As the Fourth Circuit recently explained in Kena v. Groupon, the subject of our 28J letter, Baker's holding reflects, quote, the longstanding principle that a party is not entitled to dismissal of her claims, close quote. That's at 886 F. 3rd, page 365. That principle is especially salient in the arbitration context, and it requires dismissal for lack of appellate jurisdiction here. My apprehension, it's a difficult issue, but my apprehension is that until the 28J letter, that I didn't see that to be the argument in the principle brief. I saw the principle brief saying, oh. It was, the argument in the principle brief seemed to be 41A, and then appropriately, Kena comes down afterwards, and you notified us, and to me, at that point, it became a much more difficult issue, because I had seen the facts as this not being voluntary, that in fact, he did insist on pursuing the litigation. And so Judge Yackel didn't oblige in any way. Judge Yackel just said no. And so if I just looked at Microsoft in the abstract, I'd say that's a class certification case. No court's applied it. We've got, I think, unpublished law at least taking jurisdiction. So my anxiety about following it is this hasn't been briefed much at all. They chose not to reply to the 28J. There is, in my mind, tension with Greentree. There's, I think I'm right that there's tension with unpublished Fifth Circuit law taking jurisdiction in these cases. So we've got the Fourth Circuit case, but that is distinguishable technically, because clearly the plaintiff there did say, voluntarily, I want to dismiss. And that may be just a tactical distinction, which Microsoft uses the word tactical, but it's a very consequential thing that we're being asked to do. There's a lot in your Honor's question. Let me start with Groupon and distinguishing based on those facts. I think it's important to note, first of all, just as a procedural matter, the plaintiff there on appeal also resisted, said there was not voluntary dismissal, that all she had done there, in her words, was she sought to amend the order compelling arbitration and staying in the alternative. And I think the Fourth Circuit quite correctly rejected that argument, relying in part on the principle. And I think that the Supreme Court emphasized this again and again, Justice Ginsburg's unanimous I think it's important to note that the plaintiff there on appeal also resisted, said there was not voluntary dismissal, that all she had done there, in her words, was she sought   to have a discussion with the court. The court said, it was an abuse of discretion. Yes, your honor, and I believe I heard my friend agree with you. Well, it's one of two things. It's either a voluntary dismissal, which we say it is, but he disagrees. Even if the court rejects that proposition, then it's a dismissal for failure to prosecute, and there's no argument here, either today or in the briefing, that the district court abused its discretion. And I think under those circumstances, the court need go no further to affirm. If despite that, the court goes on, I think as Judge Wiener pointed out, the arbitration agreement here specifically provides that any issue about arbitrability should go to the arbitrator to decide. And even if this court gets past that hurdle, I also believe I heard my friend say that this is a simple RICO case, and for 30 years, the U.S. Supreme Court held Justice O'Connor's unanimous opinion for the court in Cheerson that there's no barrier to arbitrating RICO claims. Again, we don't think the court needs to get there. And I would just also point out, in terms of— You would agree, the argument for you to prevail has much more settled Fifth Circuit law, if we were to get to that point, rather than the jurisdictional point, which is much more innovative. I don't disagree with you that that's more—that's certainly more straightforward. I do think on the jurisdictional point, I think the one thing that is important to point out here is that in these circumstances, if you have a litigant who can simply ignore an order compelling arbitration and wait until the district court dismisses, I think it does effectively try to render that original order appealable. Courts can get around that by just staying rather than dismissing, can't they? Well, and I think there's no question—and I think this gets back to the point about Green Tree—there's no question that—and that's what the district court did here, and that is not appealable, and that is—no one disputes that, and no court has ever questioned that. So I do think what you have here is, if there is jurisdiction here, it's hard to see why other litigants wouldn't take this tack of simply waiting it out and then getting a free and inconsequential shot at an appeal with a dismissal for failure to prosecute without prejudice, which I think undermines both the interest and finality that the Supreme Court emphasized in Microsoft v. Baker, and also in the arbitration context, as Groupon, the Fourth Circuit in Groupon, points out, where the whole point is a speedy—moving a case speedily into arbitration. It's hard to think of circumstances that would undercut that strong policy as much as allowing this sort of tactic here to succeed. So I do think that that is a strong concern in terms of the discomfort about the voluntary versus consensual. I think that is a very powerful counter-concern that counsels strongly in favor of this court finding that it lacks jurisdiction, but again, even if it were to conclude that it has jurisdiction, we think the court doesn't get past the lack of abuse of discretion for dismissal for failure to prosecute, and it certainly doesn't get past the plain text of the arbitration agreement here. If there are no further questions, then we would simply ask the court either to dismiss for lack of jurisdiction or to affirm the judgment below. Thank you. Thank you. All right. Back to you, Mr. Clearman. Okay. Your Honor, the case I cited was CBS Employees, and it is from the Sixth Circuit, and it is a case that holds if the fraud goes to the arbitration clause itself, which I think is simply prime of pain, then the arbitration clause is for the court to decide whether or not to go forward with it, not for the arbitrator. It doesn't matter what the languages they use after that. If it's fraud to get that arbitration agreement, it is fraud. Now, my point when I'm talking about how we didn't allege contract is we do not base any claim on any words in that agreement. As far as we're concerned, the only thing that happened is my client wrote a check for $329, gave it to Ignite, got a little bit of money back, and is still out money, period. There's no written agreement that provides him any relief of any sort whatsoever. The only thing that they want to enforce, the only thing that they even have an argument that is bilateral would be arbitration, and the reason that we say is that the whole case stems from RICO, which means every act they did is evidence of fraud, and that includes the arbitration clause, and specifically the arbitration clause. And we went through and explained how there's no contract, there's nothing here, there's no consideration, no mutuality, no nothing. Their response says the Sixth Circuit and our circuit both haven't embraced CBS, but actually on close looking, CBS seems sort of uncontroversial. So I didn't necessarily see that our court or the Sixth Circuit had disavowed it, but it stands for the very uncontroversial proposition that it has to be fraud in the inducement of the delegation clause. So, but again, I just didn't see in your brief where you're particularizing that your client was defrauded into signing this clause. It was instead he got pulled into the whole morass, and that seems to be precisely what the body of law that they cite all says isn't what gets you out of the arbitrator determining it. Okay. In the CBS case, basically what happened was an investor was there and they had messed up on the investor's case or his investments, and so they slid an arbitration clause in front of him, okay? He had all sorts of other parts of documents. That was a fraud to get him to sign that arbitration clause, right? I am saying that this contract, having no other purpose on the planet, exists solely to get someone to sign an arbitration clause so they can avoid ever seeing a court, okay? That is the only thing in this contract that even makes sense because nothing else provides for consideration to these people, and they don't challenge that. The only thing they say is, well, they have a right to sell our energy, but no right to get paid for selling it, and as I point out, who's going to go around selling something just because? Pay money. I'm going to pay you money, and you can change the arbitration clause after I pay you money. Do whatever you want to me. You can remove me. You can fire me, and if you come after me as a company, the company's voice now, we're just going to arbitrate with you, and we know that for $400, you're never going to do that anyway. Now, I will point out, if I may, Your Honors, in Torres, the judge chose to dismiss the action, and it was not questioned on jurisdiction. Here the judge stayed the action, and you were right, Your Honor, Judge Higginson. He could have left me and stay forever, but he chose to dismiss, which is what Torres did in the first instance. Was Torres wrong when the judge chose to dismiss the action? See, the point I'm having here is that Torres, I gave the judge the same basic argument, which is, I don't want to arbitrate. I filed motions to contest arbitration, and the judge disagreed with me and ordered me to arbitration. Now, as far as your cases that go to the Fifth Circuit, and considering dismissal, whether it has to be with prejudice or without prejudice, I would call your attention to footnote 25 of my reply. There is a listing of the cases that deal with this circuit and other circuits, but more importantly, the Green Tree case from the U.S. Supreme Court said a dismissal is even if it's without prejudice, because the only purpose in arbitration is you're dismissing it for the arbitrators to consider. All right. Thank you, sir. Here's your briefing and your argument. The case will be submitted, and we'll decide it. All right.